IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JIMMY YAMADA, ET AL.,    ) | CIVIL NO. 10-00497 JMS/LEK |
| ) | |
| Plaintiffs,    ) | ORDER GRANTING IN PART |
| ) | AND DENYING IN PART |
| vs.    ) | PLAINTIFFS' AMENDED |
| ) | MOTION FOR PRELIMINARY |
| PAUL KURAMOTO, IN HIS    ) | INJUNCTION (ONLY AS TO ACT |
| OFFICIAL CAPACITY AS CHAIR    ) | 211 § 11-KK) |
| AND MEMBER OF THE HAWAII    ) | |
| CAMPAIGN SPENDING    ) | |
| COMMISSION, ET AL.,    ) | |
| ) | |
| Defendants.    ) | |
| _____ ) | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION  (ONLY AS TO ACT 211 § 11-KK)

## I.  INTRODUCTION

In *Citizens United v. Federal Election Commission*, 130 S. Ct. 876

(2010), the Supreme Court invalidated limitations on the amount of corporate

independent campaign expenditures.  Such restrictions violate the First

Amendment.  In the wake of *Citizens United*, Plaintiffs Jimmy Yamada

("Yamada"), Russell Stewart ("Stewart"), and A-1 A-Electrician, Inc. ("A-1") filed

this action on August 27, 2010, challenging the constitutionality of several Hawaii

campaign spending laws.

A-1 is a contractor[1] that (1) does not want to continue to face burdens such as registration and record-keeping associated with classification as a "noncandidate committee" under Hawaii campaign spending laws, (2) wants to make contributions to legislative candidates, and (3) wants to run advertisements that identify candidates, but without a disclaimer otherwise required by Hawaii law.  Yamada and Stewart want to contribute to Aloha Family Alliance -- Political Action Committee ("AFA-PAC") (a political committee that makes only independent expenditures) and each wants to exceed a statutory contribution limit of $1,000 per election set forth in Hawaii law.[2]  Plaintiffs' September 3, 2010 First Amended Verified Complaint ("FAC") seeks injunctive and declaratory relief regarding the constitutionality of five Hawaii statutes, or sets of statutes, that purport to regulate Plaintiffs' proposed activities.

---

[1] A-1 is "often a government contractor" because it worked previously as a contractor for state organizations, provides services for past jobs, and expects to have state contracts in the near future.  Plaintiffs' First Amended Verified Complaint ("FAC") ¶¶ 11-12.  Yamada is A-1's chief executive officer.  FAC ¶ 7.

[2] Act 211, 2010 Haw. Sess. L. ("Act 211"), § 11-KK limits the amount of contributions to "noncandidate committees."  Section 11-KK provides:

> No person shall make contributions to a noncandidate committee in an aggregate amount greater than $1,000 in an election.  This section shall not apply to ballot issue committees.

Section 11-KK is similar to its predecessor, Hawaii Revised Statutes ("HRS") § 11-204(b), but adds the exception for ballot issue committees.

Plaintiffs filed a Motion for Preliminary Injunction on September 3, 2010, asking this court to enjoin Hawaii Campaign Spending Commission ("CSC") officials from enforcing those five statutes or sets of statutes.  The day before the scheduled hearing, Plaintiffs withdrew the request for a preliminary injunction as to the statute concerning a ban on contributions by government contractors.  The court then held an evidentiary hearing on October 1, 2010 as to the remaining four statutory areas.

This Order addresses only the claim challenging Act 211, 2010 Haw. Sess. L. ("Act 211"), § 11-KK (Limits on Contributions to Noncandidate Committees).[3]  The court will issue a separate order in due course addressing the other issues raised at the October 1, 2010 hearing.[4]  For the reasons set forth below, the court GRANTS the Motion for Preliminary Injunction in part (the as applied challenge to § 11-KK), and DENIES the Motion for Preliminary Injunction in part (the facial challenge to § 11-KK).  Defendants are enjoined from enforcing § 11-

---

[3] Act 211 became effective on July 6, 2010 (although some provisions, not at issue here, take effect in 2011).  *See* Act 211, § 13.  Act 211 "updates, organizes, and clarifies current [pre-July 2010] campaign finance laws."  Act 211, § 1.  The various sections will be re-codified in chapter 11 of the HRS; the court refers to the terms as set forth in Act 211.

[4] As announced at the preliminary injunction hearing, the court had originally intended to issue an initial short order ruling on § 11-KK, followed by a more comprehensive order at a later time explaining the court's rationale.  The court has since decided to issue this complete order on § 11-KK.  A subsequent order or orders will address the other claims raised at the October 1, 2010 hearing.

KK as to Yamada's and Stewart's proposed campaign donations to AFA-PAC, as long as AFA-PAC makes only independent campaign expenditures.

## II. <u>BACKGROUND</u>

The FAC was verified by Yamada and Stewart, and by Andrew Gerakas (who is chairman of AFA-PAC). The court thus treats relevant portions of the FAC as an affidavit. *See, e.g.*, *Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1176 (9th Cir. 2007). Yamada, Stewart, and Gerakas were also cross-examined regarding their statements in the FAC. Based upon the FAC's factual allegations, and testimony at the hearing, the court finds the following facts are established for purposes of preliminary injunctive relief relating to § 11-KK.

Plaintiffs Yamada and Stewart are Hawaii residents. As individuals, they each want to contribute $2,500 to AFA-PAC before the 2010 general election. FAC ¶ 7. By doing so, they would exceed the $1,000 limit allowed "per election" under § 11-KK. The primary election (which occurred on September 18, 2010) is considered to be a distinct "election" from the general election (set for November 2, 2010). *See* Defs.' Opp'n, filed Sept. 13, 2010, at 24. Thus, under existing law, Yamada and Stewart could contribute $2,000 for the 2010 election cycle by donating $1,000 before September 18, 2010 and donating another $1,000 between September 18, 2010 and November 2, 2010. By seeking to contribute a total of

$2,500, they would thus exceed the limit by $500.  Both Yamada and Stewart,

however, testified at the preliminary injunction hearing that they have yet to make

*any* individual contributions to AFA-PAC for 2010.  Nevertheless, they still both

want to contribute $2,500, and would do so if not for § 11-KK's limitations.

Because the September 18, 2010 primary election has passed, Yamada and Stewart

are now limited by § 11-KK to contributing only $1,000 to AFA-PAC for the 2010

election cycle.  As a result, their proposed contribution would exceed the limit by

$1,500.

   AFA-PAC is a Hawaii registered noncandidate committee[5] that makes

only "independent expenditures."[6]  That is, it does not contribute directly to

_____

   [5] *See* State of Hawaii, Campaign Spending Commission, Organizational Report of AFA-PAC, *available at* https://nc.csc.hawaii.gov/NCFSPublic/ORG_Report.php?OR_ID=20274 (last visited Oct. 7, 2010).

   [6] Act 211, § 11-B defines "independent expenditure" as "an expenditure by a person expressly advocating the election or defeat of a clearly identified candidate that is not made in concert or cooperation with or at the request or suggestion of the candidate, the candidate committee, a party, or their agents."  In turn, § 11-B, defines a "person" as:

> an individual, a partnership, a candidate committee or noncandidate committee, a party, an association, a corporation, a business entity, an organization, or a labor union and its auxiliary committees.

Federal law defines "independent expenditure" similarly, as

> an expenditure by a person --
>    (A) expressly advocating the election or defeat of a clearly identified candidate; and
>    (B) that is not made in concert or cooperation with or at the request or
>                                                       (continued...)

5

candidates, and does not coordinate spending for political speech with candidates or political parties.  FAC ¶ 8.  Garakas confirmed at the preliminary injunction hearing that he is chairman of AFA-PAC, and that it "operates like any other independent political action committee."  Garakas also testified that AFA-PAC was created in July 2010, and was formed "to influence passage of legislation that supports traditional marriage, the right to life, physician assisted suicide and promoting the issue of life in our community."  According to AFA-PAC's website, it is "committed to endorsing and financially supporting candidates, no matter what their party affiliation, who will stand up in the public square for Hawaii's families."  FAC, Ex. 1.  Its goal is to "identify, endorse and elect county, state, and federal officials who favor policies that strengthen and nourish Hawaii's families." *Id.*  It asks people to "register to vote" and make contributions to AFA-PAC so that "[m]onies will be used to support candidates who share and reflect our values."  *Id.* Defendants did not challenge his claim that AFA-PAC makes only independent expenditures.

Defendant Paul Kuramoto is the CSC chairperson.  Defendant Steven

---

[6](...continued)
>           suggestion of such candidate, the candidate's authorized political
>           committee, or their agents, or a political party committee or its agents.

2 U.S.C. § 431(17).

Olbrich is the CSC vice-chairperson.  Defendants Gino Gabrio, Dean Robb, and

Michael Weaver are CSC members.  All Defendants are sued in their official

capacities as CSC members.  FAC ¶ 23.

## III. <u>STANDARD OF REVIEW</u>

"A preliminary injunction is an extraordinary and drastic remedy

[that] is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)

(citation and quotation signals omitted).  In *Winter v. Natural Resources Defense*

*Council, Inc.*, 129 S. Ct. 365, 374 (2008), the Supreme Court explained that "[a]

plaintiff seeking a preliminary injunction must establish that he is likely to succeed

on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest."  So long as all four parts of the *Winter* test are

applied, "a preliminary injunction [may] issue where the likelihood of success is

such that 'serious questions going to the merits were raised and the balance of

hardships tips sharply in [plaintiff's] favor.'"  *Alliance for Wild Rockies v. Cottrell*,

--- F.3d ----, 2010 WL 3665149, at *4 (9th Cir. Sept. 22, 2010) (quoting *Clear*

*Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

"In other words, 'serious questions going to the merits' and a hardship balance that

tips sharply toward the plaintiff can support issuance of an injunction, assuming

the other two elements of the *Winter* test are also met." *Id.*

# IV. <u>DISCUSSION</u>

## A.    Standing

Defendants have not specifically challenged Plaintiffs' standing to

challenge § 11-KK.  Nevertheless, the court has an independent duty to address

jurisdiction (and thus standing) "even when not otherwise suggested."  *See Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted); *see*

*also Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002)

("[F]ederal courts are required sua sponte to examine jurisdictional issues such as

standing.") (citations omitted).

"Article III restricts federal courts to the resolution of cases and

controversies."  *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2768 (2008)

(citation omitted). "To qualify as a case fit for federal-court adjudication, 'an actual

controversy must be extant at all stages of review, not merely at the time the

complaint is filed.'"  *Id.* (quoting *Arizonans for Official English v. Arizona*, 520

U.S. 43, 67 (1997)).  "[A] claimant must present an injury that is concrete,

particularized, and actual or imminent; fairly traceable to the defendant's

challenged behavior; and likely to be redressed by a favorable ruling."  *Id.* (citing

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "[T]he injury

required for standing need not be actualized. . . .  A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Id.* at 2769 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  "Courts have long recognized that '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.'" *Cal. Pro-Life Council v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) (citation omitted).

Constitutional challenges alleging freedom of speech violations require a less exacting review of standing.  "In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (recognizing the "sensitive nature of constitutionally protected expression," in permitting a pre-enforcement action involving the First Amendment); *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996) ("That one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases.").  "Thus, 'when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing.'" *Ariz. Right to Life*, 320 F.3d at 1006

(quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000)).

    Applying these standards, Yamada and Stewart have standing to challenge § 11-KK.  They each legitimately desire to make a contribution or contributions to AFA-PAC that would exceed the statutory limitations, giving rise to an actual controversy.  *See Davis*, 128 S. Ct. at 2768.  If they make their proposed contributions above the limit, they could be subject to administrative fines or misdemeanor criminal prosecution.  *See* Act 211, § 11-JJJ (providing for possible fines up to $1,000 per occurrence, or three times the amount of unlawful contribution) and § 11-LLL ("Any person who recklessly, knowingly, or intentionally violates any provision of this part shall be guilty of a misdemeanor").  Yamada or Stewart need not actually violate the statute to challenge its terms.  *See, e.g.*, *Cal. Pro-Life Council*, 328 F.3d at 1094; *Bland*, 88 F.3d at 736-37.  Finally, a favorable ruling would allow them to contribute to AFA-PAC without violating the law.  *Davis*, 128 S. Ct. at 2768.

## B.  Section 11-KK's Contribution Limitations to Noncandidate Committees

    The court next analyzes Hawaii's per-election limitation on contributions to noncandidate committees to determine whether Yamada and Stewart are likely to succeed on the merits.  As noted earlier, the limitation in § 11-KK provides:

> No person shall make contributions to a noncandidate committee in an aggregate amount greater than $1,000 in an election.  This section shall not apply to ballot issue committees.[7]

## 1.      *Level of Scrutiny*

Campaign contribution limitations "operate in an area of the most fundamental First Amendment activities."  *Buckley v. Valeo*, 424 U.S. 1, 15 (1976).  Nevertheless, contribution limitations generally "entail[] only a marginal restriction upon the contributor's ability to engage in free communication."  *Id.* at at 20.  And so, the court analyzes the constitutional validity of campaign-contribution limitations by applying "closely drawn scrutiny."  Under this test,

---

[7] Act 211, § 11-B defines a "noncandidate committee"as:

> an organization, association, party, or individual that has the purpose of making or receiving contributions, making expenditures, or incurring financial obligations to influence the nomination for election, or the election, of any candidate to office, or for or against any question or issue on the ballot; provided that a noncandidate committee does not include:

>> (1) A candidate committee;

>> (2) Any individual making a contribution or making an expenditure of the individual's own funds or anything of value that the individual originally acquired for the individual's own use and not for the purpose of evading any provision of this part; or

>> (3) Any organization that raises or expends funds for the sole purpose of producing and disseminating informational or educational communications that are not made to influence the outcome of an election, question, or issue on a ballot.

"[c]ontribution limitations are permissible as long as the Government demonstrates that the limits are 'closely drawn' to match a 'sufficiently important [government] interest.'" *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 691 (9th Cir. 2010) (quoting *Randall v. Sorrell*, 548 U.S. 230, 247 (2006)) (other citation omitted), *cert. denied*, (U.S. Oct. 4, 2010).[8]

Unlike contributions, *expenditure* limitations directly inhibit speech. *See Citizens United*, 130 S. Ct. at 910 ("[A]n independent expenditure is political speech[.]"). "Expenditure limitations may restrict the breadth and depth of political dialogue and they 'preclude[] most associations from effectively amplifying the voice of their adherents, the original basis for recognition of First Amendment protection of the freedom of association.'" *City of Long Beach*, 603 F.3d at 692 (quoting *Buckley*, 424 U.S. at 22) (other citation omitted). As a result, limitations on campaign expenditures must pass strict scrutiny -- they are valid

---

[8] In this regard, the Ninth Circuit noted some uncertainty with whether "closely drawn" scrutiny remains the appropriate test for contribution limits after *Citizens United*. *See Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 691 n.4 (9th Cir. 2010) ("The Supreme Court has not yet explicitly discarded "closely drawn scrutiny," . . . . [and] [i]t is unclear whether [language from *Citizens United*] is the death knell for closely drawn scrutiny or whether it was intended only to reaffirm the long standing principle that expenditure limitations, like those at issue in *Citizens United*, are subject to strict scrutiny.") Because it was not dispositive, the Ninth Circuit expressly withheld deciding whether the level of scrutiny over contribution limits has changed. *Id.* Although the court finds that "closely drawn" scrutiny remains the appropriate test, the exact standard to be applied is ultimately immaterial here. As the court explains below, the government has no valid constitutional interest in regulating contributions to AFA-PAC.

only if narrowly tailored to a compelling government interest.  *Id.*

### 2.     *The Government Interest*

The court's analysis necessarily begins with scrutinizing the possible government interest justifying the limitation, whether it be an expenditure or contribution limitation.  If there is no valid interest (whether it needs to be "compelling" or "sufficiently important"), the court need not reach whether a regulation is "narrowly tailored" or "closely drawn" to that interest.  And *Citizens United* largely answers that question.  Although *Citizens United* struck down an expenditure (and not a contribution) limitation, its discussion of valid government interests provides direct insight in analyzing whether § 11-KK's *contribution* limitation can constitutionally apply to limit Yamada's and Stewart's contributions to AFA-PAC.

"The Supreme Court has concluded that preventing corruption or the appearance of corruption are the *only* legitimate and compelling government interests thus far identified for restricting campaign finances."  *City of Long Beach*, 603 F.3d at 694 (citations and internal quotation marks omitted) (emphasis added).[9]

---

[9] Other government interests, however, can apply to justify certain *regulation* (*e.g.*, disclosure) of campaign-related speech -- such as an interest in "providing the electorate with information about the sources of political campaign funds."  *Speechnow.org v. Fed. Election Comm'n*, 599 F.3d 686, 696 (D.C. Cir. 2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 66 (1976)), *petition for cert. filed*, 79 USLW 3077 (U.S. July 23, 2010) (No. 10-145).

In *Citizens United*, the Court rejected (by overruling *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652 (1990)) an "antidistortion" interest -- the government's preventing the "corrosive and distorting effects [in elections] of immense aggregations of wealth that are accumulated with the help of the corporate form and that have little or no correlation to the public's support for the corporation's political ideas."  130 S. Ct. at 903 (quoting *Austin*, 494 U.S. at 660).  Although *Citizens United* reiterated that "ensur[ing] against the reality or appearance of [*quid pro quo*] corruption" could justify certain limits on direct contributions, *id.* at 908, it concluded "*[n]o* sufficient government interest justifies limits on the political speech of . . . corporations." *Id.* at 913 (emphasis added).  That is, no interest can justify limits on amounts of independent corporate campaign expenditures.

However specifically defined by statute, an independent expenditure is not coordinated with a candidate or a candidate's campaign.  It is neither prearranged nor done at the suggestion of a candidate.  It is "independent." *Citizens United* reasoned that such independent expenditures could therefore not give rise to corruption or the appearance of corruption. *Id.* at 908-09.  Even if independent expenditures could lead to "influence" or "access," it does not follow that "corruption" exists.  "The appearance of influence or access . . . will not cause the electorate to lose faith in our democracy." *Id.* at 910.  Therefore, a government

14

interest in preventing the reality or appearance of corruption cannot justify limiting amounts of independent expenditures for political speech, even by a corporate entity. *Id.* at 913.

Courts after *Citizens United* have addressed the next logical question: whether *contribution* limitations to organizations that make only independent campaign expenditures are valid -- precisely the situation the court faces here in deciding whether Yamada's and Stewart's proposed contributions to AFA-PAC can constitutionally be limited by § 11-KK.  And the Ninth Circuit in *City of Long Beach* recently applied *Citizens United's* rationale -- that an anti-corruption rationale does not apply where only independent expenditures are involved -- and specifically held that there is no legitimate government interest in restricting contributions to organizations that engage only in independent spending.  *See City of Long Beach*, 603 F.3d at 696-99.  As with limits on independent expenditures, prevention of corruption or its appearance cannot justify limiting campaign contributions if those contributions can lead only to independent campaign expenditures.  *See id.* at 699 (concluding that "the City's anti-corruption rationale does not support the [City's campaign reform act's] limitations on contributions").

The Ninth Circuit does not stand alone on this reading of *Citizens United* -- the D.C. Circuit agrees.  In *Speechnow.org v. Fed. Election Commission*,

599 F.3d 686, 695 (D.C. Cir. 2010) (en banc), *petition for cert. filed*, 79 USLW

3077 (U.S. July 23, 2010) (No. 10-145), the court considered, after *Citizens*

*United*, whether contribution limitations in parts of the Federal Election Campaign

Act, 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3), were unconstitutional as applied to

individual contributions to a non-profit association engaged in purely independent

express advocacy.  The en banc court found that the provisions violate the First

Amendment:

> In light of the Court's holding [in *Citizens United*] as a
> matter of law that independent expenditures do not
> corrupt or create the appearance of *quid pro quo*
> corruption, contributions to groups that make only
> independent expenditures also cannot corrupt or create
> the appearance of corruption.  The Court has effectively
> held that there is no corrupting "quid" for which a
> candidate might in exchange offer a corrupt "quo."

*Id.* at 694-95.  As in *City of Long Beach*, *Speechnow.org* "conclude[d] that the

government has no anti-corruption interest in limiting contributions to an

independent expenditure group[.]"  *Id.* at 695.

Although the government might still limit contributions made directly

to candidates or parties, "the need for contribution limitations to combat corruption

or the appearance thereof tends to decrease as the link between the candidate and

the regulated entity becomes more attenuated."  *City of Long Beach*, 603 F.3d at

696.  If the organization receiving contributions truly engages in only independent

16

expenditures, the link is not only attenuated -- it is broken.  An anti-corruption or appearance of corruption rationale is nonexistent.  It follows that contribution limitations to such organizations violate the First Amendment.

In short, the Ninth Circuit has spoken -- *City of Long Beach* is directly on point.  Section 11-KK limits the amount of contributions a person can make to a "noncandidate committee."  If that noncandidate committee makes only independent expenditures -- as the court finds is true with AFA-PAC -- then, under *Citizens United*, Hawaii cannot limit those expenditures.  And, under *City of Long Beach*, Hawaii cannot limit contributions -- as § 11-KK does -- to such a noncandidate committee.  Yamada's and Stewart's contributions to AFA-PAC can only lead to independent expenditures.  The record contains no evidence contradicting AFA-PAC's assertion that it "operates like any other independent political action committee."  In fact, Defendants offered "no basis on which to conclude that [AFA-PAC] ha[s] the sort of close relationship with candidates that supports a plausible threat of corruption or the appearance thereof."  *Id.* at 698. Thus, Defendants' proffered justification -- prevention of corruption or the appearance of corruption (Defs' Opp'n, at 26) -- is invalid as applied to Yamada's and Stewart's proposed contributions.  *See City of Long Beach*, 603 F.3d at 699; *see also Speechnow.org*, 599 F.3d at 695.

In opposition, Defendants also argue that Yamada and Stewart are free under § 11-KK to contribute as much as they want to organizations that may support their views, as long as they do not exceed the statutory threshold to a single noncandidate committee.  They can spread out their contributions to others. This argument misses the point.  Yamada's and Stewart's complaint is not that they are unconstitutionally limited in the total amount they can contribute in an election. Rather, their complaint is that the government is improperly limiting them from contributing what they want to a particular noncandidate committee (doing independent spending) of their choice.  The government has no legitimate interest in suggesting to whom a person should make their personal campaign contributions.

For these reasons, Yamada and Stewart are likely to succeed -- whether applying strict or exacting scrutiny -- on their challenge to § 11-KK, as applied to their proposed contributions to AFA-PAC that would exceed the statutory limit.[10]

///

///

---

[10] Because an anti-corruption interest is invalid under these circumstances, the court need not reach whether the limitation is sufficiently tailored to that interest.

18

### 3.     *A Facial Challenge*

Yamada and Stewart also challenge § 11-KK facially, arguing that it

is overbroad.  In this First Amendment context, analyzing overbreadth typically

requires determining whether "a 'substantial number' of [§ 11-KK's] applications

are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'"

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)

(quoting *New York v. Ferber*, 458 U.S. 747, 769-771 (1982)); *see also Comite de*

*Jornaleros de Redondo Beach v. City Of Redondo Beach*, 607 F.3d 1178, 1196 (9th

Cir. 2010).

The court cannot make such a determination -- which appears to

require a factual record -- on the record before it.  To prevail, Yamada and Stewart

must establish that § 11-KK would be unconstitutional as applied to a "substantial

number" of other applications.  And although Plaintiffs have the "heavy burden" to

prove overbreadth, *see McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 207

(2003), the record contains no evidence whatsoever as to the effect of § 11-KK on

other organizations or as to what percentage of noncandidate committees make

only independent expenditures.

Moreover, § 11-KK's limitation appears to be valid as applied to

contributions to a noncandidate committee that -- unlike AFA-PAC -- does not

engage solely in independent expenditures, *i.e.*, that coordinates at least some spending with a party or candidate.  *See Citizens United*, 130 S. Ct. at 909 ("[C]ontribution limits . . . unlike limits on independent expenditures, have been an accepted means to prevent *quid pro quo* corruption."); *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 152-54, 159-60 (2003) (detailing the long history of contribution limitations, and upholding a federal statute barring corporate contributions to candidates); *City of Long Beach*, 603 F.3d at 696 ("The Supreme Court has upheld limitations on contributions to entities whose relationships with candidates are sufficiently close to justify concerns about corruption or the appearance thereof.").  As the Ninth Circuit explained, "the strength of the state's interest in preventing corruption is highly correlated to the nature of the contribution's recipient."  *Id.* (quoting *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 291 (4th Cir. 2008)).  If a noncandidate committee does at least some coordinated spending, a government interest in preventing corruption or the appearance of corruption remains a valid reason for limiting contributions to such a noncandidate committee.

And a $1,000 per election limitation would likely be "closely-drawn" to that substantial government interest.  As the Supreme Court has reasoned, judges "have 'no scalpel to probe' each possible contribution level [and]  . . . cannot

determine with any degree of exactitude the precise restriction necessary to carry out the statute's legitimate objectives." *Randall*, 548 U.S. at 248 (quoting *Buckley*, 424 U.S. at 30). *See also, e.g.*, *Montana Right to Life Ass'n v. Eddleman*, 343 F.3d 1085, 1093-94 (9th Cir. 2003) (finding statutory limits on campaign contributions by individuals and political action committees were closely drawn to further a state's interests).

Thus, to the extent that Yamada and Stewart seek a declaration at a preliminary injunction stage that § 11-KK is facially unconstitutional, they are not likely to succeed on the merits.

## C.    Preliminary Injunction

The court next applies *Winter* to determine whether to enter a preliminary injunction.  Under *Winter,* the court must consider four factors: (1) the plaintiff's likelihood of success, (2) irreparable injury in the absence of preliminary relief, (3) the balance of equities, and (4) whether an injunction is in the public interest.  129 S. Ct. at 374.

The first two factors are easily met.  Given *City of Long Beach* and the previous analysis, Yamada and Stewart have established a likelihood of success on the merits as to their as-applied challenge.  Given that First Amendment rights are at stake, the likelihood of irreparable harm is presumed.  *See, e.g.*, *Klein v. City of*

*San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (reiterating that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (other citations omitted).

The balance of equities also tips in favor of Yamada and Stewart. Defendants argue that even if a preliminary injunction is not entered, Yamada and Stewart can still make eighty percent of their intended contributions to AFA-PAC ($2,000 of their intended $2,500) and that they could contribute the remaining amount to someone else.[11]   They contrast that "limited" hardship with possible confusion caused by enjoining a campaign-contribution statute shortly before an election.   While it might be true that Yamada and Stewart could still make some (forty percent) of their intended contribution to AFA-PAC, the harm they are asserting is not necessarily that their total contributions to a particular cause are limited.   Rather, it is that government is limiting their ability to contribute to the organization of their choice (where the organization engages in only independent expenditures).   Given the First Amendment right at stake, the balance tips in Plaintiffs' favor.

---

[11] Their argument was made before the September 18, 2010 primary election.  Because neither Stewart nor Yamada made a contribution to AFA-PAC before then (as they testified in court), they would now be limited to $1,000 under § 11-KK -- forty percent of their desired contribution.

As for the public interest factor, there certainly are instances where it is not in the public interest to enjoin campaign finance rules in the midst of election season. *See, e.g.*, *McComish v. Brewer*, 2008 WL 4629337, at *10 (D. Ariz. Oct. 17, 2008); *Thalheimer v. City of San Diego*, 2010 WL 3489335, at *6 (S.D. Cal. Sept. 3, 2010). The public certainly has an interest in maintaining the integrity of the electoral process. Here, however, Defendants offered no evidence of harm or disruption that might result from invalidating § 11-KK as applied to Yamada's and Stewart's proposed contributions. The record contains no testimony or proffered statistics quantifying or describing, for example, how many other contributors or independent noncandidate committees might be confused as to the meaning or application of § 11-KK. The court can, of course, envision some uncertainty as to how this Order might be interpreted by potential contributors, committees, candidates, and the electorate. But without some basis in the record, the court could only speculate as to possible disorder.

On the other hand, the court must consider the "significant public interest" in upholding free speech principles. *Klein*, 384 F.3d at 1208 (citing *Sammartano v. First Jud. Dist. Court, in & for Cnty. of Carson*, 303 F.3d 959, 974 (9th Cir. 2002)). It serves the public interest to follow a clear mandate from the Ninth Circuit (*City of Long Beach*) and protect First Amendment rights, especially

23

where political speech (albeit a contribution limit, not direct expression) is involved. *Sammartano*, 303 F.3d at 974. "[T]iming is of the essence in politics" and "[a] delay of even a day or two may be intolerable[.]" *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021 (9th Cir. 2009) (quoting *NAACP v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984)), *cert denied*, 130 S. Ct. 1569 (2010).

It bears re-emphasizing that this Order does not strike § 11-KK as unconstitutional on its face. This Order only enjoins § 11-KK from being applied to restrict a situation such as Yamada's and Stewart's, where their contributions are to a noncandidate committee (like AFA-PAC) that engages in only independent expenditures. Given the relatively limited nature of the preliminary injunction, any disruption to the electorate by enjoining enforcement of § 11-KK as to these facts is insufficient to prevent these contributions. In any event, weighing potential disruption against the First Amendment rights at issue where a Ninth Circuit opinion is directly on point, the court concludes it is in the public interest to issue this preliminary injunction now.

Considering all the *Winter* factors, the court concludes that a preliminary injunction should issue as to enforcement of § 11-KK over Yamada's and Stewart's proposed contributions to AFA-PAC. Defendants are enjoined from

limiting the amount of contributions Yamada and Stewart may make to AFA-PAC, and GRANTS the Motion to that extent.  The court, however, DENIES the Motion to the extent Yamada and Stewart seek a ruling that § 11-KK is facially unconstitutional.

## V.  **CONCLUSION**

The court GRANTS Plaintiffs' Amended Motion for Preliminary Injunction in part (the as applied challenge to § 11-KK) and DENIES the Motion in part (the facial challenge to § 11-KK).  The contribution limit in § 11-KK is unconstitutional as applied to Yamada's and Stewart's proposed contributions to AFA-PAC (an entity that engages in solely independent expenditures) in excess of the statutory limit.  Defendants are enjoined from enforcing § 11-KK's monetary contribution limit as to Yamada's and Stewart's proposed campaign donations to AFA-PAC.

The court is mindful that this Order, which declares a campaign contribution law unconstitutional on an as-applied basis only a few weeks before the 2010 general election, has the potential to cause some disorder.  In other similar circumstances, enjoined parties have sought immediate relief with appellate courts. As a prerequisite to doing so, under Rule 8(a) of the Federal Rules of Appellate Procedure, a party must ordinarily file a motion to stay in the district court before

seeking relief in an appellate court.  *See, e.g.*, *Thalheimer v. City of San Diego*, 2010 WL 1201885, at *7 (S.D. Cal. Mar. 23, 2010) (denying motion for an immediate stay of a preliminary injunction pending appeal, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure).  The court will therefore allow Defendants until Tuesday, October 12, 2010, to file with this court a motion to stay pending appeal.  That is, the court *temporarily* stays the effect of this Order solely to allow Defendants to file in this court a motion to stay this Order pending appeal.  If no such motion is filed, the preliminary injunction shall take effect on October 13, 2010.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 7, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Yamada et al. v. Kuramoto et al.*, Civ. No. 10-00497 JMS/LEK, Order Granting in Part and Deying in Part Plaintiffs' Amended Motion for Preliminary Injunction (Only as to Act 211 § 11-KK)